## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE CYGANIEWICZ,       ) | |
|            ) | |
|       Plaintiff,       ) | |
|            ) | CIVIL ACTION |
| v.            ) | No. 13-40068-TSH |
|            ) | |
| SALLIE MAE, INC.,       ) | |
|            ) | |
|       Defendant.       ) | |
|            ) | |

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION (Docket No. 12)[1]
### October 24, 2013

**HILLMAN, D.J.**

### Introduction

Suzanne Cyganiewicz ("Plaintiff") brought suit against Sallie Mae, Inc. ("Defendant") claiming the Defendant's collection practices violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, *et seq.* Defendant brought a Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Stay Proceeding and Compel Arbitration (Docket No. 12), claiming Plaintiff must submit to the arbitration of her claims under the terms of the Arbitration Agreement she signed.

---

[1] Defendant's motion is titled "Defendant, Sallie Mae Inc.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, or in the Alternative, to Stay Proceedings and Compel Arbitration." However, the body of the motion makes clear that it is a motion to dismiss for lack of subject matter jurisdiction, and is simply incorrectly titled. The Court will therefore refer to the Motion as "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Stay Proceedings and Compel Arbitration."

**Background**

Plaintiff is the co-signor on three promissory notes securing three separate student loans extended by Defendant to Plaintiff's daughter.  *Defendant's Motion to Dismiss* (*Def.'s Mot. Dismiss*") at 3.  Plaintiff entered into the promissory notes by submitting electronically signed loan applications to Defendant.  *Id.* at 5 (citing Declaration of Carl O. Cannon ("Cannon Dec.") ¶¶ 5, 8, 11).  The first loan was disbursed on September 15, 2008, in the principle amount of $20,111.00.  *Id.* at 3.  The second and third loans were disbursed on September 14, 2010, in the principle amounts of $6,000.00 each.  *Id.*

All three promissory notes contain a provision entitled "**ARBITRATION AGREEMENT**."  *Def.'s Mot. Dismiss*, Ex. 1 § T; Ex. 2 § T, Ex. 3 § T.  Each Arbitration Agreement provides that either party may elect to arbitrate, and require the other party to arbitrate, any "Claim."  *Id.*  The Arbitration Agreements broadly define the term "Claim" to include "any legal claim, dispute or controversy between [Defendant] and [Plaintiff] that arises from or relates in any way to this Note…including…any dispute relating to: (1) the imposition *or collection* of principle…or other charges or fees relating to this note…."  *Id.* (emphasis added). The Agreement further specifies that the term includes "disputes involving . . . negligence or other torts, *or violation of statute*, regulation, or common law" arising out of or relating in any way to each Note.  *Id.* (emphasis added).

The Arbitration Agreements each include a sub-section entitled "**RIGHT TO REJECT**." *Def.'s Mot. Dismiss*, Ex 1 § T at ¶ 1; Ex. 2 § T at ¶ 1, Ex. 3 § T at ¶ 1.  This sub-section provided Plaintiff an opportunity to reject the Arbitration Agreement.  *Id.*  Plaintiff could reject by sending a signed rejection notice to Defendant within sixty days of the initial disbursement of the

relevant loan.  *Id.*  Plaintiff did not exercise her right to reject the Arbitration Agreement with respect to any of the three loans.  *Def.'s Mot. Dismiss* at 5 (citing Cannon Dec., ¶¶ 7, 10, 13).

In March of 2013, Plaintiff began receiving calls from Defendant.  *Compl.* ¶ 9. Defendant made these calls to collect the outstanding balance on the loans.  *Compl.* ¶ 10.  The calls came from an automated dialing machine.  *Compl.* ¶ 13. On March 14, 2013, Plaintiff spoke with Defendant's representative, "Kiley," and requested that Defendant cease making collection calls.  *Compl.* ¶ 14.  Defendant did not cease making collection calls.  *Compl.* ¶¶ 15-48. Between March 15, 2013 and May 10, 2013, Plaintiff received appoximately147 automated phone calls from Defendant.  *Compl.* ¶¶ 16-47.

Based on these calls, Plaintiff filed suit claiming Defendant violated the TCPA. In response, Defendant filed the present motion. In its Motion, Defendant invokes the Arbitration Agreements contained in the promissory notes.  Defendant argues that because the Arbitration Agreements are valid, binding, and enforceable, and Plaintiff's claims fall squarely within the scope of the agreements, the Court must compel Plaintiff to submit her claims to arbitration. Plaintiff makes three arguments in opposition to Defendant's Motion. First, Plaintiff claims that the parties have not executed valid and enforceable arbitration agreements. Second, Plaintiff argues that her TCPA claims do not fall within the scope of the arbitration agreements.  Third, Plaintiff argues that arbitration of TCPA claims is inappropriate because Congress intended to preclude a waiver of judicial remedies for violations of the TCPA.

## Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to any contract involving interstate commerce, and "declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. § 2).  Under the FAA, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 25 (1983).

"A party seeking to compel arbitration under the FAA must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir.2003)).  If the moving party does so, the court must then decide whether Congress intended to "preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp.Ala. v. Randolph*, 531 U.S. 79, 90 (2000).  The party resisting arbitration bears the burden on this issue.  *In re Rarities Group, Inc.*, 434 B.R. 1, 7 (D. Mass. 2010).  If the Court finds the all of the claims asserted are arbitrable, it may grant a motion to dismiss and compel arbitration.  *Dialysis Access Center, LLC,* 638 F.3d at 372-73 (noting that dismissal is proper if all the claims asserted are arbitrable); *Bercovitch v.Baldwin Sch.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) ("[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable.").

Here, Plaintiff denies that a valid agreement exists and that the claim asserted comes within the clause's scope.  Defendant, then, has the burden of showing these elements. Plaintiff claims that Congress intended to preclude a waiver of judicial remedies for TCPA claims, and the burden of showing this is on her.

*The Validity of the Arbitration Agreement*

Principles of state contract law control whether a valid arbitration agreement exists. *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012).  Under Massachusetts law, a valid and enforceable contract is formed if there is an agreement between the parties on the material terms of the agreement and the parties have a present intention to be bound by that agreement. *Situation Management Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000).  Plaintiff asserts that Defendant has not presented any evidence or documentation showing that Plaintiff signed or executed any document consenting to arbitration.  In fact, Defendant provided documents as exhibits to its Motion clearly showing that Plaintiff signed the three promissory notes, and that each note contains a conspicuous arbitration agreement and a specific provision allowing one to reject the arbitration agreement.  *See Def.'s Mot. Dismiss* Ex. 1; Ex. 2; Ex. 3.  Plaintiff's signed each of the notes and did not sign any of the rejection notices to show she was rejecting the arbitration agreement.  *Id.*  This is sufficient to show agreement to the terms of the arbitration agreements and present intention to be bound by those terms, including the arbitration agreement.  *St. Fleur v. WPI Cable Sys./Mutron*, 450 Mass. 345, 355 (2008) ("one who signs a written agreement is bound by its terms.").

Plaintiff's further claim that Defendant did not specifically call her attention to the arbitration agreements is unavailing. First, the section in each of the promissory notes regarding the Arbitration Agreement is very conspicuous; the title is bolded and capitalized. Similarly, the title and entire text of the "right to reject" provision is in bold is the first provision in the Arbitration Agreement section. Moreover, Massachusetts courts have consistently held that absent any fraud, which Plaintiff has not pled, a person is bound by the terms of a written agreement she enters "whether he reads and understands them or not." *St. Fleur,* 450 Mass. at

355. The fact that Defendant may not have specifically point out the arbitration agreements to

Plaintiff, or that Plaintiff may not have fully understood them does not impair their effect. *Id.*;

*see Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43-44 (1st Cir. 2012) ("Massachusetts law is

explicit that it does not impose a special notice requirement upon contracts containing arbitration

clauses").  Defendant has shown that Plaintiff signed the promissory notes containing the

arbitration agreements; therefore this Court finds that the arbitration agreements are valid and

enforceable.

*The Scope of the Arbitration Agreements*

In evaluating the scope of valid and enforceable arbitration agreements, federal policy

dictates that courts should strongly favor compelling arbitration.  *Mastrobuono v. Shearson*

*Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Volt Info. Sci., Inc.*, 489 U.S. at 475-76;

*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).  Courts in this Circuit will

compel arbitration "unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute."  *IOM Corp. v. Brown Forman*

*Corp.*, 627 F.3d 440, 450 (1st Cir. 2010).

Plaintiff argues that the arbitration agreements cannot be interpreted to cover her TCPA

claims because the agreements do not specifically mention unlawful conduct by Defendant, in

violation of the TCPA. This argument is unpersuasive. Defendant has presented the agreements,

signed by Plaintiff, which clearly state the Arbitration Agreement covers disputes relating to "the

imposition or collection of principal," specifically including disputes alleging "violation of

statute."  *Def.'s Mot. Dismiss*, Ex. 1 § T; Ex. 2 § T, Ex. 3 § T.  Based on this language, the Court

cannot conclude that the arbitration agreements are not susceptible to an interpretation that

covers the present dispute.  Plaintiff's claims unambiguously fall within the scope of the

agreement because they relate to the collection of the principle of the loan and they allege a violation of statute.

Plaintiff further argues that her TCPA claims are beyond the scope of the arbitration agreements because they do not relate to construction of the notes or the parties' rights and obligations under them.  To support this argument, Plaintiff relies exclusively on decisions from other circuits.  *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011); *Collins & Aikman Products Co. v. Building Sys. Inc.*, 58 F.3d 16, 23 (2nd Cir. 1995).  Plaintiff's reliance on these cases is inappropriate.  The First Circuit has explicitly rejected the idea that a claim is beyond the scope of an arbitration agreement if it does not turn on issues contract interpretation or performance. *Dialysis Access Center, LLC*, 638 F.3d at 381; *see Next Step Medical Co. v. Johnson & Johnson Int'l Inc.*, 619 F.3d 67, 72 (1st Cir. 2010) (finding a tort claim was within the scope of an arbitration agreement covering "any dispute, controversy or claim… arising out of or relating in any way to the business relationship"). In *Dialysis Access Center, LLC*, the Court explains that only the Ninth Circuit, and to a much lesser extent the Second Circuit, continue to adhere to the analysis in *In re Kinoshita & Co.* which held that the scope of arbitration covering all disputes "arising under" contract is limited to disputes relating to interpretation or performance of contract.  *Dialysis Access Center, LLC*, 638 F.3d at 380-81; *see In re Kinoshita & Co,* 287 F.3d 951, 953 (2nd Cir. 1961). The Court goes on to hold that the First Circuit agrees with the majority of federal circuits "that the analysis in *Kinoshita* is not consistent with the strong federal pro-arbitration policy set forth by the FAA" and should not be followed.  *Dialysis Access Center, LLC*, 638 F.3d at 381.  Plaintiff's argument therefore holds no weight in the First Circuit.

A plain reading of the arbitration agreement indicates the parties' intent to arbitrate disputes arising out of collection of principle, including disputes alleging violations of statutes. As such, Plaintiff's TCPA claims arising out of Defendant's practices relating to collection of the loans fall squarely within the scope of the arbitration agreements.

### Whether TCPA Claims are Arbitrable

Plaintiff argues that her TCPA claims are not arbitrable because Congress intended to preclude waiver of the judicial forum for such claims. It is well established principle that some federal statutory claims are appropriate for arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). If the parties enter into an arbitration agreement, it should be enforced unless Congress "has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 26. The party resisting arbitration bears the burden of establishing that Congress intended to preclude waiver of judicial remedies. *See Gilmer*, 500 U.S. at 26; *In re Rarities Group, Inc.*, 434 B.R. at 7. Congressional intent to preclude waiver of judicial remedies may be shown by means of statutory text, legislative history, or "some inherent conflict between arbitration and [the statute's] underlying purposes." *Gilmer*, 500 U.S. at 26.

Plaintiff has not met her burden of establishing a congressional intent to preclude waiver of judicial remedies for TCPA claims. Plaintiff argues that Congress intended to preclude waiver of judicial remedies because Congress described TCPA's remedies in terms of court suits. See, e.g., 47 U.S.C. § 227(b)(3) (using the term "court" when discussing possible remedies, for example, noting a person may bring an action in court). This argument has been addressed and explicitly rejected by the Supreme Court. *See CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665,

671 (2012) ("It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the "contrary congressional command" overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.");

*Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226 (1987)* (holding that statutory language in the Racketeer Influenced and Corrupt Organizations Act (RICO) providing that an injured party may sue in any appropriate United States district court does not establish congressional intent to preclude waiver of judicial forum).

Plaintiff has offered no further evidence of a congressional intent to preclude waiver of a judicial forum for TCPA claims.  Thus, Plaintiff has not met her burden of proving a congressional intent to preclude a waiver of judicial remedies for TCPA claims.

## Conclusion

For the reasons set forth above, the Court finds that the Plaintiff and Defendant executed valid and enforceable arbitration agreements, that the Plaintiff's TCPA claims are within the scope of these agreements, and that Plaintiff did not establish her burden of proving Congress intended to preclude arbitration of TCPA claims. Accordingly, Defendant's Motion to Dismiss (Docket No. 12) is **granted**, and the case is **dismissed**.


SO ORDERED.


/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE